| UNITED STATES DISTRICT COURT | | EASTERN DISTRICT OF TEXAS |
| --- | --- | --- |

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| *versus* | § | CASE NO. 1:17-CR-20(7) |
| | § | |
| ESMIR COLORADO-CUERO | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Esmir Colorado-Cuero's ("Colorado-Cuero") *pro se* Motion to Appoint Counsel and Motion for Compassionate Release (#s 309, 310), wherein he requests the court to appoint an attorney to assist him in filing a motion for compassionate release and to release him from imprisonment due to his medical condition and the threat of Coronavirus Disease 2019 ("COVID-19").    The Government filed a response in opposition to Colorado-Cuero's motions (#312).  United States Probation and Pretrial Services ("Probation") recommends denying the motion.  Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

I.    Background

On May 3, 2017, a federal grand jury in the Eastern District of Texas returned a two-count Superseding Indictment charging Colorado-Cuero and five codefendants in Count One with Conspiracy to Possess with Intent to Distribute a Controlled Substance (Heroin), in violation of 21 U.S.C. § 846, and in Count Two with Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h).  On October 22, 2018, Colorado-Cuero pleaded guilty to both counts of the Superseding Indictment.  On February 14, 2019, the court sentenced Colorado-Cuero on each count to 121 months' imprisonment, to be served concurrently, followed by a 5-year term

of supervised release for Count One and a 3-year term of supervised release for Count Two, also to be served concurrently.[1]  On February 13, 2019, Colorado-Cuero appealed his conviction and sentence, and, on June 21, 2021, the United States Court of Appeals for the Fifth Circuit dismissed the appeal as frivolous.  Colorado-Cuero is currently housed at Federal Correctional Institution Berlin ("FCI Berlin"), located in Berlin, New Hampshire.[2]  His projected release date is September 7, 2026.

Colorado-Cuero requests a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(B).  This section of the statute, however, addresses the court's ability to modify a term of imprisonment pursuant to Rule 35 of the Federal Rules of Criminal Procedure.  In his motion, Colorado-Cuero does not request a sentence reduction based on substantial assistance to the Government or a technical error after sentencing.  Thus, the court will analyze Colorado-Cuero's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A).

II.    Appointment of Counsel

Colorado-Cuero requests the appointment of counsel to assist him in filing a motion for compassionate release under 18 U.S.C. § 3582(c).  There is no constitutional right to appointed counsel in post-conviction proceedings.  *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."); *see Garza v. Idaho*, ___ U.S. ___, 139 S. Ct. 738, 749 (2019); *McCleskey v. Zant*, 499 U.S. 467, 494-95

---

[1] Prior to this case, a federal grand jury in the Eastern District of Texas charged Colorado-Cuero in a one-count Indictment with Unlawful Reentry by a Deported or Removed Alien, in violation of 8 U.S.C. § 1326(a), in Case No. 1:18-CR-63.  He entered a guilty plea in that case at the same time he pleaded guilty in this case.  The court sentenced him to a four-month term of imprisonment to run concurrently with his sentence in this case.

[2] When Colorado-Cuero filed the instant motion, he was housed at the Reeves County Detention Center, located in Pecos, Texas.

(1991); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021) (finding that "every federal court of appeals to address the issue has agreed that there is no constitutional (or statutory) right to appointed counsel in § 3582(c) proceedings"); *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018); *In re Sepulvado*, 707 F.3d 550, 554 (5th Cir.), *cert. denied*, 571 U.S. 952 (2013).  Specifically, the Supreme Court of the United States has stated:

> Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.  Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals.  We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, *a fortiori*, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Finley*, 481 U.S. at 555 (internal citations omitted).

The court may, however, in the interest of justice, appoint counsel to assist a defendant in the pursuit of post-conviction relief where a defendant has raised nonfrivolous claims with factually and/or legally complex issues.  *See United States v. Whitebird*, 55 F.3d 1007, 1011 (5th Cir. 1995) ("After [a defendant's first appeal], the decision whether to appoint counsel rests in the discretion of the district court."); *accord United States v. Hereford*, 385 F. App'x 366, 368 (5th Cir. 2010).

> The exercise of discretion in this area is guided . . . by certain basic principles. When applying this standard and exercising its discretion in this field, the court should determine both whether the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing this claim.

*United States v. Molina-Flores*, No. 3:16-CR-130-N (19), 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018) (quoting *Jackson v. Coleman*, No. 3:11-cv-1837, 2012 WL 4504485, at *4 (M.D.

Pa. Oct. 2, 2012)); *see Scoggins v. MacEachern*, No. 04-10814-PBS, 2010 WL 3169416, at *1 (D. Mass. Aug. 10, 2010) ("In order to obtain appointed counsel, 'an indigent litigant must demonstrate exceptional circumstances in his or her case to justify the appointment of counsel.' The rare cases warranting appointment of counsel in the interests of justice typically involve nonfrivolous claims with factually and/or legally complex issues and a petitioner who is severely hampered in his ability to investigate the facts." (quoting *Cookish v. Cunningham*, 787 F.2d 1, 2 (1st Cir. 1986))).

Colorado-Cuero is not entitled to the appointment of counsel to assist him with seeking compassionate release under 18 U.S.C. § 3582. *See Finley*, 481 U.S. at 555; *Whitebird*, 55 F.3d at 1010-11 (declining to recognize constitutional or statutory right to assistance of counsel in bringing § 3582(c)(2) motion for sentence reduction); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("There is no right to counsel in § 3582 or other post-appellate criminal proceedings."). Moreover, Colorado-Cuero provides no basis for the court to conclude that the appointment of counsel would benefit him or the court in addressing his motion. A motion "for compassionate release is not particularly complex factually or legally." *United States v. Drayton*, No. 10-200018, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020); *see United States v. Wilfred*, No. 07-351, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). In any event, Colorado-Cuero has failed to raise any potentially viable claims or any factually or legally complex issues that could arguably justify the appointment of post-conviction counsel. Colorado-Cuero is 38 years old and there is no indication that he is seriously ill, disabled, or otherwise a candidate for compassionate release. Thus, the court finds that the discretionary appointment of counsel is not warranted. *See* 18 U.S.C. § 3006A(a)(2) (allowing

appointment of counsel under certain circumstances when "the court determines that the interests of justice so require").  Accordingly, Colorado-Cuero's motion for appointment of counsel is denied.

III.    Compassionate Release

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).  This provision is commonly referred to as "compassionate release."

A.    Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *See United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the court, a defendant must first submit a request to the warden

of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F. 4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, on February 3, 2022, Colorado-Cuero submitted a request for a reduction in sentence to the warden of Reeves County Detention Center. Warden C. Cole did not respond within 30 days. Although Colorado-Cuero complied with the exhaustion requirement before filing the present motion, nothing in his motion indicates that extraordinary and compelling reasons exist to reduce his sentence.

B.    Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must establish three criteria. *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). First, he must meet one of two conditions listed in

§ 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Id.* at 391.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Id.* at 392.  Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[3]  *Id.*; *accord United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release.  Rather, Congress elected to delegate its authority to the Commission.  *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392.  Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes what reasons qualify as

---

[3] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

extraordinary and compelling.[4]  However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[5]  Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP.  *See Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Nevertheless, while recognizing that they are not binding, the court views the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release.  *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  The word "extraordinary" is defined

---

[4] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances:  (I) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason.  U.S.S.G. § 1B1.13 cmt. n.1.

[5] U.S.S.G. § 1B1.13 was last amended on November 1, 2018.  The Commission has, to date, been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum.  The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines.  28 U.S.C. §§ 991(a), 994(a).  At present, the Commission has only one voting member.

as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing." *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021). "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'" *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)).

    1.   <u>Medical Condition</u>

In the instant motion, Colorado-Cuero, age 38, contends that he is eligible for compassionate release due to his medical condition—specifically, that he suffers from high blood pressure and that the medications he takes to treat the condition present a high risk of adverse effects if he is infected with COVID-19 or receives a COVID-19 vaccination.[6] Colorado-Cuero, however, presents no evidence or authority in support of these contentions.[7] Although not binding

---

[6] The record is unclear as to whether Colorado-Cuero has received a COVID-19 vaccination. His BOP medical records appear to indicate both that he has refused all vaccinations and that he was vaccinated in March and April of 2021. Colorado-Cuero, Probation, and the Government, however, assert that he is not vaccinated. Thus, the court will proceed assuming that Colorado-Cuero has not received a COVID-19 vaccination.

[7] A review of the scientific data reveals that medical authorities have concluded that high blood pressure drugs do not add to COVID-19 complications or risk. In a study published in *The Lancet Respiratory Medicine* on January 7, 2021, an international team led by researchers in the Perelman School of Medicine at the University of Pennsylvania found that medications used to treat high blood pressure did

on the court, § 1B1.13 suggests that extraordinary and compelling reasons exist regarding a defendant's medical condition when the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or when a defendant is "suffering from a serious physical or medical condition," "suffering from a serious functional or cognitive impairment," or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

According to Colorado-Cuero's Presentence Investigation Report ("PSR"), prepared on December 14, 2018, he reported to Probation that his only notable health problem was high blood pressure. He explained that he was advised of the condition during a health screening completed while he was detained prior to pleading guilty in the case at bar. Colorado-Cuero's BOP medical records indicate that he has been diagnosed with hypertension and hyperlipidemia with ischemia. He is currently prescribed Amlodipine, Hydrochlorothiazide, and Lisinopril to manage his hypertension. Colorado-Cuero's most recent blood pressure readings—132/85 on June 25, 2022, 120/82 on June 2, 2022, and 127/91 on May 16, 2022—suggest that he is merely at risk for high blood pressure.[8] Indeed, a medical note dated November 4, 2021, indicates that both his

---

not affect outcomes among patients hospitalized with COVID-19. Moreover, according to pharmacology experts, researchers at the Virginia Commonwealth University, and the British Heart Foundation, studies have concluded that none of the drugs commonly used to treat high blood pressure, including Lisinopril and Amlodipine, are affected by or affect a COVID-19 vaccine.

[8] According to the Centers for Disease Control and Prevention ("CDC"), a "Normal" systolic level is less than 120 mm Hg with a diastolic of less than 80 mm Hg; the "At Risk" systolic range is 120 to 139 mm Hg with a diastolic range of 80 to 89 mm Hg; and a "High Blood Pressure" systolic level is 140 mm

hypertension and hyperlipidemia with ischemia were "controlled" and that the degree of control was "good." On June 14, 2022, William Keyes, O.D., commented in Colorado-Cuero's medical records, "IM [inmate] reports BP [blood pressure] well controlled with medications." The BOP classifies Colorado-Cuero as a Medical Care Level 1 inmate. According to the BOP's Clinical Practice Guidance, dated May 2019, Care Level 1 inmates "are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6-12 months."

None of Colorado-Cuero's medical conditions are terminal or substantially diminish his ability to provide self-care, nor do they otherwise present extraordinary and compelling reasons justifying compassionate release. *See Thompson*, 984 F.3d at 433. To the contrary, according to his medical records, Colorado-Cuero's hypertension and hyperlipidemia with ischemia are well managed with medication. *See id.* The court acknowledges that according to the CDC website, one of Colorado-Cuero's underlying medical conditions—specifically, hypertension—can make him more likely to become severely ill should he contract COVID-19[9]; nonetheless, such commonplace afflictions do not make Colorado-Cuero's case "extraordinary." *See id.* at 434.

According to the CDC, 47% of the adults in the United States (116 million) have hypertension, and of those, only about 24% have their condition under control. In addition, more than 12% of the adult population of the United States (29 million) has high cholesterol. In view

Hg or higher with a diastolic of 90 mm Hg or higher.

[9] In relevant part, the CDC states that adults who have chronic lung diseases (including COPD, asthma, interstitial lung disease, cystic fibrosis, and pulmonary hypertension) or heart conditions (such as heart failure, coronary artery disease, cardiomyopathies, or hypertension) can be more likely to become severely ill from COVID-19.

of their pervasiveness, high blood pressure and high cholesterol cannot be deemed "extraordinary" in order to merit compassionate release. *See Thompson*, 984 F.3d at 434 (noting that neither hypertension nor high cholesterol made the defendant's case "extraordinary" because "nearly half of the adult population in the United States suffers from hypertension" and "roughly 12% of Americans suffer from high cholesterol"); *see also United States v. Whited*, No. 21-1644, 2022 WL 1259028, at *2 (7th Cir. Apr. 28, 2022) (affirming denial of compassionate release when the district court concluded that the defendant, who suffered from cardiomyopathy, hyperlipidemia, and other medical conditions, failed to establish extraordinary and compelling reasons for release); *United States v. Rodriguez*, 27 F. 4th 1097, 1100 (5th Cir. 2022) (affirming denial of relief to a prisoner who suffered from hypertension and obesity but whose hypertension was controlled through medication and had not experienced any heart problems since suffering a heart attack eight years previously); *United States v. Reeves*, No. 7:15CR00047-001, 2022 WL 72780, at *1 (W.D. Va. Jan. 7, 2022) (finding that a defendant, who suffered from obesity, diabetes, and cardiomyopathy, had not established extraordinary and compelling reasons for his early release); *United States v. Slone*, No. 7:12-05-KKC-4, 2021 WL 164553, at *1 (E.D. Ky. Jan. 19, 2021) (holding that inmate who suffered from heart disease (for which he had a stent), chronic obstructive pulmonary disease (COPD), high cholesterol, obesity, and depression had not established extraordinary and compelling reasons for compassionate release as his condition was not terminal and did not diminish his ability to provide self-care within the prison environment); *United States v. Durham*, No. 3:18-cr-251-MOC-DCK-1, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020) (finding the fact that the defendant has hypertension, a condition that may increase

his risk for severe illness from COVID-19, without more, does not present an "extraordinary and compelling reason" for compassionate release); *United States v. Wilson*, No. 2:18cr132, 2020 WL 4901714, at *5 (W.D. Wash. Aug. 20, 2020) (rejecting the notion that inmate's hypertension claim was sufficient to justify early termination of sentence); *United States v. Bolze*, 460 F. Supp. 3d 697, 709 (E.D. Tenn. 2020) (finding that extraordinary and compelling circumstances did not exist where the defendant suffered from congestive heart failure, hyperlipidemia, hypertension, cardiomyopathy, and migraine headaches).

In this instance, Colorado-Cuero's BOP records reveal that he is housed in general population, is ambulatory, has no medical restrictions, has regular duty work assignments, and is cleared for food service. He is able to provide self-care in the institutional setting, is not limited in his activities of daily living, and engages in recreational sports. Indeed, a Health Service Form dated April 19, 2021, indicates that he incurred a minor injury while playing soccer. Thus, Colorado-Cuero has failed to establish the existence of medical problems that would constitute extraordinary and compelling reasons to reduce his sentence.

2.    COVID-19

Colorado-Cuero expresses concerns about contracting COVID-19 while in prison. Nevertheless, as of August 3, 2022, the figures available at www.bop.gov list 0 inmates (out of a total inmate population of 859) and 2 staff members at FCI Berlin as having confirmed positive cases of COVID-19, 451 inmates and 92 staff members who have recovered, and 0 inmates who succumbed to the disease. Thus, it appears that the facility where Colorado-Cuero is housed is handling the outbreak appropriately and providing adequate medical care.

Although Colorado-Cuero expresses legitimate concerns regarding COVID-19, he does not establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat Colorado-Cuero, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."); *Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Banks*, No. CR 15-0080-02, 2020 WL 6839267, at *4 (W.D. La. Nov. 20, 2020) ("This Court cannot equate the generalized fear of COVID-19 to an extraordinary and compelling reason to support compassionate release, nor will it undermine BOP's criteria to determine eligibility for sentence reductions or home confinement."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, 455 F. Supp. 3d 285, 292 (W.D. La. 2020))); *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Furthermore, contracting the virus while incarcerated, even in conjunction with preexisting health conditions, is insufficient to establish exceptional and

compelling circumstances warranting compassionate release.  *See United States v. Jackson*, No. 3:16-CR-196-L-1, 2020 WL 4365633, at *2 (N.D. Tex. July 30, 2020) (finding that defendant had failed to present extraordinary and compelling reasons for compassionate release despite suffering from previous underlying health conditions and testing positive for COVID-19).

Moreover, the BOP is in the process of administering the COVID-19 vaccine to inmates and staff.  To date, the BOP has administered approximately 325,946 doses of the vaccine. According to www.bop.gov, FCI Berlin, where the defendant is housed, has fully inoculated 704 inmates and 153 staff members.  Colorado-Cuero's BOP medical records reflect that he refused the COVID-19 vaccine on March 1, 2021, April 17, 2021, April 20, 2021, November 1, 2021, and April 11, 2022, without any suggestion that it was medically contraindicated.  Notably, courts have denied compassionate release where, as here, the inmate has refused the COVID-19 vaccine. *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release.  The risk is self-incurred."); *United States v. Seleznev*, No. 2:11-CR-00070-RAJ, 2021 WL 4804614, at *3 (W.D. Wash. Oct. 14, 2021) (finding that a single study where a COVID-19 vaccination caused a hepatitis C reactivation did not warrant compassionate release for the defendant who refused the vaccine based on inactive hepatitis B and latent tuberculosis); *United States v. Jackson*, No. 11-20493, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021) (holding that a defendant's vaccination refusal based on fear of a reaction with an unspecified blood condition was not a compelling reason for release because the CDC does not consider the condition a COVID-19 vaccination contraindication); *United States v.*

*Greenlaw*, No. 1:18-CR-00098-JAW-06, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [the defendant] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions."); *United States v. Pruitt*, No. 3:14-CR-0384-B-1, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021) (finding that the defendant "cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because he faces an increased risk of severe illness or death should he contract COVID-19 on the other hand"); *United States v. Jackson*, No. CR 07-40-2, 2021 WL 1145903, at *2 (E.D. Pa. Mar. 25, 2021) (holding that because the defendant refused the COVID-19 vaccine, she "voluntarily declined to 'provide self-care' and mitigate her risk of a severe COVID-19 infection"); *United States v. Austin*, No. 15-20609, 2021 WL 1137987, at *2 (E.D. Mich. Mar. 25, 2021) ("Defendant cannot establish that his conditions are exceptional and demand immediate release when he intentionally prevents the BOP from mitigating dangers to his health and safety."); *United States v. King*, No. 16-CR-478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021) ("In declining vaccination[, Defendant] declined the opportunity to reduce his risk [of] exposure to COVID-19 dramatically; he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction."); *accord United States v. Braxton*, No. 4:16-CR-117, 2021 WL 1721741, at *5 (E.D. Tex. Apr. 30, 2021). Similarly, Colorado-Cuero cannot be heard to complain about the dangers of COVID-19 in prison and then fail to take the available measures to mitigate the risk, such as being vaccinated. The

court finds that Colorado-Cuero has failed to establish that his medical problems or the risk of contracting COVID-19 constitute extraordinary and compelling reasons to reduce his sentence.

C.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *Chambliss*, 948 F.3d at 693-94.

Colorado-Cuero's offense of conviction entails his participation in a conspiracy to distribute heroin and to commit money laundering with a number of other individuals from Colombia.[10]  The drug trafficking organization distributed large quantities of heroin in Houston and New Orleans, transporting it through the Eastern District of Texas.  In January 2016, a codefendant delivered approximately $100,000.00 in United States currency to a confidential informant posing as a cartel money courier.  Colorado-Cuero was in proximity of the transaction and was aware that the funds represented drug proceeds or facilitating funds.  Colorado-Cuero subsequently met with the codefendant who was observed carrying a bag from his vehicle to Colorado-Cuero's vehicle.  Authorities then initiated a traffic stop of Colorado-Cuero's vehicle and recovered more than $100,000.00.  Agents learned through further investigation that

---

[10] Colorado-Cuero is a citizen of Colombia who is present in the United States illegally.

Colorado-Cuero had a financial interest in 997.87 grams of heroin seized by authorities on January 20, 2016, in a traffic stop in Beaumont, Texas. Multiple witnesses confirmed that Colorado-Cuero made numerous attempts to collect money from members of the drug trafficking organization whom he believed were responsible for losing the 997.87 grams of heroin before it could be sold. Colorado-Cuero also pleaded guilty to illegal reentry of the United States and was sentenced to 4 months' imprisonment simultaneously with his sentencing in the case at bar. He was previously deported to Colombia in June 2011 and February 2013 following his unlawful entry of the United States. An immigration detainer was lodged against Colorado-Cuero on February 2, 2018, and remains pending. Further, while incarcerated, he incurred a disciplinary infraction for being unsanitary.

"Compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). In view of the nature and circumstances of his offense of conviction, the court cannot conclude that Colorado-Cuero's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. In addition, granting Colorado-Cuero compassionate release would fail to provide just punishment for his offense and promote respect for the law. In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence. 948 F.3d at 694. The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a

sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense." *Id.* at 693-94. "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Chambliss*, 948 F.3d at 693-94; *see Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"). In the case at bar, releasing Colorado-Cuero after he has served only 53 months (or approximately 44%) of his 121-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Colorado-Cuero's track record is similarly a poor one. In this instance, there is no reason to believe that Colorado-Cuero would not revert to his prior heroin-trafficking and money-laundering activities as well as his repeatedly entering the United States illegally if released from prison at this time.

IV.    <u>Conclusion</u>

In sum, Colorado-Cuero has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See United States v. Dodge*, No. 17-323-01, 2020 WL 3668765, at *5 (W.D. La. July 6, 2020) (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"); *Koons*, 455 F. Supp. 3d at 291-92 (same). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Dodge*, 2020 WL 3668765, at *6; *Koons*, 455 F. Supp. 3d at 292.

In accordance with the foregoing analysis, Colorado-Cuero's *pro se* Motion to Appoint Counsel and Motion for Compassionate Release (#s 309, 310) are DENIED.

SIGNED at Beaumont, Texas, this 3rd day of August, 2022.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE